MICHAEL E. KIRBY, Judge.
| tPIaintiff appeals the trial court’s granting of defendants’ motion for summary judgment.
This litigation arises out of a claim for personal injuries filed by Neil McAskill for his contraction of malignant mesothelioma while he worked at the American Marine facility in New Orleans. Defendants Eagle, Inc. (formerly known as “Eagle Asbestos & Packing Co., Inc.” hereinafter “Eagle”), Branton Insulations, Inc., (hereinafter “Branton”), and Commercial Union, liability insurer of Branton, moved for summary judgment, arguing that there was no evidence that Eagle or Branton ever supplied asbestos insulation to American Marine, plaintiffs employer.
In opposition to those motions for summary judgment, plaintiff offered the following items of evidence:
1. Neil McAskill’s November 28, 2006 deposition.
2. Robert Honold’s September 24, 2007 deposition.
3. Sworn testimony of Fred Schuber,, President of Eagle.
|24. A Letter dated October 5, 1972,
from Fred Schuber to Frenchie Borde-lon, the insulation Superintendent of Avondale Shipyards.
5. Documents establishing that Eagle was the authorized insulation contractor for PABCO in Louisiana in the 1950’s-'60’s.
6. A Fiberboard document dated September 29, 1971, in which this manufacturer of PABCO, announced a new *266 asbestos-free version of its previously asbestos-containing PABCO.
7. Sworn testimony of Eagle, as represented by Fred Schuber.
8. Sworn testimony of Tom Branton, President of Branton Insulations.
9. The affidavit of plaintiffs wife, Barbara, who worked at American Marine in the accounting department for roughly ten years beginning in August of 1969, which states she recalls processing invoices from Branton Insulations.
Defendants’ Motion for Summary Judgment argued that plaintiff presented no evidence that Mr. McAskill was exposed to any specific Eagle or Branton asbestos products by way of sale, distribution, supply and/or installation. The trial court granted Eagle and Branton’s motions.

DISCUSSION

Our review of this grant of summary judgment is de novo but governed by La. C.C.P. art. 966. Shambra, v. Roth, 04-0467, p. 2 (La.App. 4 Cir. 9/29/04), 885 So.2d 1257, 1259.
Summary judgments are favored and factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and |3all doubt must be resolved in the opponents’ favor. Willis v. Medders, 00-2507, p. 2 (La.12/08/00), 775 So.2d 1049, 1050; Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 17 (La.2/29/00), 755 So.2d 226; Berthelot v. Avondale Industries, Inc., 2002-1779, (La.App. 4 Cir. 2/26/03), 841 So.2d 91; writ denied, 854 So.2d 368.
The trial court is not permitted to make credibility determinations on a motion for summary judgment. Independent Fire Insurance Co., supra p. 16, at 236. It is not the function of the district court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. Knowles v. McCright’s Pharmacy, Inc., 34, 559, p. 3 (La.App. 2 Cir. 4/4/01), 785 So.2d 101, 103.
In the instant matter, the plaintiff asserts that the district court erred by granting summary judgment in favor of Eagle and Branton. Appellant asserts that he presented evidence that a genuine issue of material fact exists, and that such evidence should be evaluated by a trier of fact to determine whether plaintiff was exposed to Eagle’s asbestos containing products and/or Branton’s. Specifically, as regards Branton, he contends purging of sales records constitutes an attempt to conceal asbestos information so as to avoid liability.
It is scientifically proven, and legislatively recognized, that a causal relationship exists between asbestos exposure and the occurrence of mesothelioma.
|4The deposition of Mr. Robert J. Honold identifies both Eagle and Branton as insulation vendors to American Marine, plaintiffs employer, and states that the insulation products sold to American Marine, especially the insulation for the exhaust systems, contained asbestos. Mr. Honold knew the plaintiff as an employee of American Marine, a fact that is not contested. Mr. Honold stated that he was familiar with both Kaylo and Pabco (asbestos containing insulation products of the time) and that they were used at American Marine.
As to the basis for Mr. Honold’s testimony that Eagle was a vendor to American Marine, Mr. Honold’s responded:
When I got involved in the purchasing side of it, the customer relationships were already established. The vendors and so forth were all there. You used the same people mostly over and over.
*267 Moreover, Mr. Honold related that American Marine got mostly pipe insulation from Eagle, that he was put in charge of phasing out the asbestos containing insulation.
The record contains the sworn testimony of Fred Schuber, the President of Eagle, who acknowledged that prior to the early 1970s, all industrial pipe insulation contained asbestos. As corporate representative of Eagle, he believed the switch from the old asbestos pipe insulation to the asbestos-free pipe insulation to have been made around the mid-seventies.
The record also contains an October 5, 1972 letter from Mr. Schuber, to Frenchie Bordelon, the Insulation Superintendent of Avondale Shipyards, in which Mr. Schuber states:
| a As you are well aware, the use of asbestos-free insulation materials is something that is fairly new and, while all of the recognized manufacturers are in the process of developing asbestos-free products, it will probably be some time before full production is attained.
This October 5, 1972 letter also acknowledges that Eagle represented Pabco Manufacturers. Substantiating this statement, plaintiff also includes in the record a January 10, 1953 Agreement establishing Eagle Asbestos & Packing Co., Inc, as a Pabco Engineering Service Unit, thereby giving Eagle, inter alia, some distributing rights for Pabco’s asbestos-containing insulation products. The record also includes another Authorized Insulation Contractor Agreement dated August 22, 1961, between Eagle and another manufacturer, Phillip-Carey Manufacturing Co., of asbestos containing insulation.
Also in the record is a September 29, 1971 document from Fiberboard, the manufacturer of Pabco, announcing a new asbestos-free version of its previously asbestos-containing Pabco. This announcement artfully notes the change in phasing out the asbestos containing insulation and limiting its future sale to present inventory if and only if written request is also made for it by the buyer. The announcement goes on to state that if it generates questions, to call the regional sales managers. Not once in the announcement are health concerns raised as the motivation for the change.
Mr. Neil McAskill testified by deposition that beginning in 1952 he was exposed to asbestos as a mechanic working for American Marine in one building that contained the pipe shop and other facilities. This exposure was by virtue of working with and around asbestos containing insulation products including pipe 1 fiinsulation and cloth. Moreover, he testified he had hands on experience applying insulation.
Additionally, the affidavit of Barbara McAskill establishes that she worked in the accounting department at American Marine for approximately ten (10) years beginning in August of 1969, and she recalls processing invoices from Branton In-sulations.
In essence, Eagle argues that Mr. Ho-nold’s response is based upon circumstantial evidence and he has no documents to confirm his belief. Branton makes similar arguments, akin to asserting that the plaintiff/deceased employee need prove exactly what the corporate offices knew. This is not the test for summary judgment. Here, plaintiff has put forth evidence that permits a reasonable mind to conclude that Eagle and Branton sold asbestos containing insulation products to American Marine. Thus, American Marine employees, such as Mr. McAskill, were exposed to their asbestos containing products.
Also, in Branton’s case, the employee cannot be expected to produce documents from Branton when its corporate representative testified that Branton had “purged”/destroyed relevant documents/evidence in 1982.
*268 Defendants raise the applicability of Thibodeaux v. Asbestos Corp. Limited, et al., 2007-0617 (La.App. 4 Cir. 2/20/08), 976 So.2d 859. We find Thibodeaux distinguishable in that this Court found that the plaintiffs neither produced evidence that asbestos was used by the defendant while Mrs. Thibodeaux worked in the facility, nor produced evidence to show that Mrs. Thibodeaux was exposed |7to asbestos if it was present. Thibodeaux, 07-0617, p. 13, 976 So.2d at 867. In the case sub judice, the plaintiff has presented evidence to substantiate that he was actively engaged in working with and actually handling asbestos insulation.
Vodanovich v. A.P. Green Industries, Inc., 03-1079 (La.App. 4 Cir. 3/3/04), 869 So.2d 930, stands for the proposition that in latent mesothelioma cases, where the human body is injured over time due to chemical exposure, the plaintiff need show only that the defendant’s asbestos-containing product was a substantial factor in causing his alleged disease. This burden can be met by simply showing that he was actively working with asbestos-containing materials, such as insulating pipes or exhaust systems. Grant v. American Sugar Refining, Inc., 06-1180 (La.App. 4 Cir. 1/31/07), 952 So.2d 746. Moreover, Voda-novich, supra, is likewise distinguishable because that record lacked evidence that the plaintiff was exposed to any asbestos fibers as a result of any repair work done by thé ship repair companies.
Medical science has proven a causal relationship between asbestos exposure and mesothelioma above background levels. Thus, such asbestos exposure is a causative factor in producing the disease. Torrejon v. Mobil Oil Co., 03-1426 (La.App. 4 Cir. 6/2/04), 876 So.2d 877.
In Hennegan v. Cooper/T. Smith Steve-doring Co., 2002-0282 (La.App. 4 Cir. 12/30/02), 837 So.2d 96, we acknowledged certain medical principles regarding asbestos cases. First, brief exposures to asbestos have caused mesothelioma in persons decades later. Second, every non-trivial exposure to | ¡¡asbestos contributes to and constitutes a cause of mesothelioma. Hen-negan, supra, p. 8-17, at 103-107.
It is reasonable to conclude that plaintiffs work in the shipyard with asbestos-containing insulation actively exposed him to greater than a background level.[1] At any rate, this creates a genuine issue of material fact that is not proper for summary judgment.
The standard of review for granting summary judgment is whether there exist genuine issues of material fact and, in this matter, any doubt must be resolved in favor of the non-moving party. La. C.C.P. art. 966. Here, whether the depositions in the record and circumstantial evidence can convince a trier of fact that plaintiff, Mr. McAskill, was exposed sufficiently to asbestos containing materials sold by Eagle and Branton is one upon which reasonable minds may disagree. Grant v. American Sugar Refining, Inc., 06-1180 (La.App. 4 Cir. 1/31/07), 952 So.2d 746, [analyzed the sufficiency aspect to the test for asbestos exposure]. Therefore, it is not susceptible to summary judgment.
For the aforementioned reasons, we reverse the trial court’s granting of summary judgment and remand for further proceedings in accord with this opinion.
REVERSED AND REMANDED.

. We take judicial notice of the facts that led to the promulgation of OSHA regulations which were enacted to cease the use of asbes-los because of the adverse health consequences that inflicted those who were exposed to it.